# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS

———————————————————— x
:    Civil Action No. 5:19-cv-190
ADAN DE LOS SANTOS, individually and on :
behalf of others similarly situated,    :    CLASS ACTION COMPLAINT
:
:    Jury Trial Demanded
Plaintiff,    :
:
v.    :
:
SUN LOAN COMPANY, INC.,    :
:
Defendant.    x

————————————————————

## Nature of Action

1.     This case arises from activities conducted by Sun Loan Company, Inc. ("Sun Loan" or "Defendant"), in contacting individuals believed to be its debtors, through the use of automated calls in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., and the Federal Communications Commission ("FCC" or "Commission") rules promulgated thereunder, 47 C.F.R. § 64.1200.

2.     Defendant violated the TCPA by making calls to Adan De Los Santos ("Plaintiff") and class members using an "automatic telephone dialing system" as described in 47 U.S.C. § 227(b)(1), without prior express consent within the meaning of the TCPA.

3.     Plaintiff brings this action for injunctive relief and statutory damages to hold Defendant accountable for its illegal activities in utilizing automatically dialed calls to solicit payment from individuals it presumably (but wrongfully) believed to be debtors.

**Jurisdiction and Venue**

4.      This matter in controversy exceeds $5,000,000, as each member of the proposed class of thousands is entitled to up to $1,500.00 in statutory damages for each call that violates the TCPA.

5.      Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

6.      Further, Plaintiff alleges a national class, which will result in at least one class member belonging to a different state.

7.      Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

8.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

9.      This Court has personal jurisdiction over Defendant because the conduct at issue in this case occurred, among other locations, in Texas.

10.      Venue is proper because a substantial portion of the events complained of occurred in this District.

**Parties**

11.      Plaintiff is, and at all times mentioned herein was, an individual citizen of the State of Texas residing in Edinburg.

12.      Defendant is a Texas corporation with its principal place of business in San Antonio, Texas.

## The TCPA

13.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

14.     Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

15.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[1]

16.     This statutory language dictates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)."  *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018) (emphasis supplied).[2]

17.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

---

[1] 47 U.S.C. § 227(b)(1)(A)(iii).

[2] In the past, the FCC has held that this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers."  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

3

18.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

19.     The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."[4]

20.     The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention."[5]

21.     A 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[6]

22.     And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."[7]

23.     Further, courts have long held that that a "called party" under the TCPA is the recipient of the call, not the party the caller was intending to reach.[8]

---

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14,014 (2003).
[4] *Id*. at 14,143 n. 31.
[5] *Id*. at 14,092.
[6] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("2008 FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).
[7] In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 15391, 15399 (2012).
[8] *See, e.g.*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC,*, 679 F.3d 637, 638-39 (7th Cir. 2012).

24.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[9]

25.     The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[10]

26.     A single call using both a prerecorded voice and an autodialer constitutes two violations of the TCPA, even if both violations arose from the same call. *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101 (11th Cir. 2015).

27.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided it with prior express consent within the meaning of the statute.[11]

### Factual Allegations

28.     Plaintiff is, and at all times was, a "person" as defined by 47 U.S.C. § 153(39).

29.     In or around November 2018, Plaintiff began receiving numerous autodialed calls on his cellular telephone—(956) XXX-1470—from Defendant.

30.     At times, when Plaintiff did not answer Defendant's calls, Defendant left a message requesting a return call.

31.     At least one telephone number appeared on Plaintiff's caller ID when Defendant placed its calls: 956-720-4324.

---

[9] *2008 FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).
[10] *Id.*
[11] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

32.     This telephone number appears to be associated with Defendant.

33.     For example, when this number is called, a representative answers the call and acknowledges that he or she is employed with Sun Loan.

34.      In addition, a search of the aforementioned telephone number is associated with Sun Loan.[12]

35.     Plaintiff believes Defendant called his cellular telephone number approximately eighty times, including, but not limited to, the following dates and times: December 8, 2018 at 10:12 a.m.; December 10, 2018 at 3:29 p.m.; December 11, 2018 at 11:02 a.m.; December 12, 2018 at 4:13 p.m.; December 13, 2018 at 8:57 a.m. and 4:48 p.m.; December 14, 2018 at 9:11 a.m.; December 20, 2018 at 1:21 p.m.; December 21, 2018 at 2:43 p.m.; December 22, 2018 at 2:06 p.m.; December 26, 2018 at 4:14 p.m.; December 27, 2018 at 9:21 a.m.; December 28, 2018 at 3:16 p.m.; December 29, 2018 at 10:21 a.m.; and December 31, 2018 at 2:47 p.m.

36.     Defendant's calls were not intended for Plaintiff.

37.     Rather, Defendant placed its calls in an effort to reach someone other than Plaintiff named "Jesse Ramos."

38.     Plaintiff spoke to Defendant on at least three different occasions, and each time informed Defendant that he was not Jesse Ramos and that Mr. Ramos was not associated with his cellular telephone number.

39.     During those calls, Plaintiff instructed Defendant to stop calling his cellular telephone number.

40.     No matter, Defendant's calls to Plaintiff's cellular telephone number continued.

---

[12] *See* https://www.sunloan.com/locations/sun-loan-company-edinburg-texas-375/.

41.     In receiving unwanted and unsolicited calls on his cellular telephone, Plaintiff suffered concrete harm in the form of lost time spent fielding the unwanted calls and attempting to get Defendant to stop the calls, loss of use of his cellular telephone as the calls came in, and the invasion of privacy and intrusion upon his seclusion.

42.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, telephone contact made by Defendant to Plaintiff on his cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

43.     To be sure, when Plaintiff answered the calls from Defendant, there was a long pause and then a clicking noise before one of Defendant's representatives came on the line.

44.     Upon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, Defendant placed its calls to Plaintiff's cellular telephone number by using (i) an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a person will be available to take the call, or (ii) equipment that dials numbers and, when certain computer software is attached, also assists persons in predicting when a sales agent will be available to take calls, or (iii) hardware, that when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers, or (iv) hardware, software, or equipment that the FCC characterizes as a predictive dialer through the following, and any related, reports and orders, and declaratory rulings: *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd 17459, 17474 (September 18, 2002); *In the Matter of Rules and Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14092-93 (July 3, 2003); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008).

45.     The telephone number on which Sun Loan used to contact Plaintiff was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

46.     Plaintiff did not provide his "prior express consent" allowing Sun Loan to place telephone calls to Plaintiff's cellular phone utilizing an "automatic dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

47.     Indeed, Plaintiff was never a customer or debtor of Sun Loan.

48.     In fact, Sun Loan's representatives asked for someone other than Plaintiff.

49.     Plaintiff is not, nor was at the time of the calls in question, one of Defendant's customers.

50.     Plaintiff does not have, nor did have at the time of the calls in question, a business relationship with Defendant.

51.     Plaintiff requested that the calls stop multiple times and explained to Defendant's representatives that Defendant was calling the wrong number.

52.     Defendant continued to call Plaintiff's cellular phone anyway.

53.     In fact, Defendant's calls to Plaintiff's cellular phone became so intrusive, Plaintiff lodged a complaint against Defendant with the Federal Trade Commission complaining of Defendant's abusive calling practices.

54.     The telephone calls made to Plaintiff's cellular phone by Defendant were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

55.     The telephone calls to Plaintiff's cellular phone made by Defendant, which utilized an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiff's prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

### Class Action Allegations

56.     Plaintiff brings this action on behalf of himself and on behalf of other persons similarly situated.

57.     Plaintiff proposes the following class definition, subject to amendment as appropriate:

> All persons and entities throughout the United States (1) to whom Sun Loan Company, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of Sun Loan Company, Inc.'s calls, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from four years prior to the date of this complaint through and including the date of class certification.

58.     Plaintiff represents, and is a member of, the class.

59.     Excluded from the class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

60.     Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

61.     Plaintiff does not know the exact number of members in the class, but on information and belief, the number of class members at minimum is in the thousands.

62.     The members of the class are ascertainable because the class is defined by reference to objective criteria.

63.     In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

64.     Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedure on the part of Defendant.

65.     Plaintiff's claims are based on the same theories as are the claims of the members of the class.

66.     Plaintiff suffered the same injuries as the members of the class.

67.     Plaintiff and all members of the class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of their cellular phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

68.     This class action complaint seeks injunctive relief and money damages.

69.     The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

70.     The disposition of claims in a class action will provide substantial benefit to the parties and the judicial economy of the court in avoiding a multiplicity of identical suits.

71.     There are well defined, nearly identical, questions of law and fact affecting all class members.

72.     The questions of law and fact involving the class claims predominate over questions which may affect individual class members.

73.     Those common questions of law and fact include, but are not limited to, the following:

a.    Whether non-emergency calls made to Plaintiff and class members' cellular telephones used an automatic telephone dialing system and/or an artificial or prerecorded voice;

b.    Whether such calls were made by Defendant;

c.    Whether Defendant can meet its burden of showing it obtained prior express consent (i.e., consent that is clearly and unmistakably stated) to make such calls to wrong or reassigned telephone numbers;

d.    Whether Defendant's conduct was knowing and/or willful;

e.    Whether Defendant is liable for damages, and the amount of such damages; and

f.    Whether Defendant should be enjoined from engaging in such conduct in the future.

56.    As a person who received numerous and repeated telephone calls using an automatic telephone dialing system, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each class member.

57.    Plaintiff will fairly and adequately represent and protect the interests of the class, and has no interests which are irrevocably antagonistic to any member of the class.

58.    Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

59.    A class action is the superior method for the fair and efficient adjudication of this controversy.

60.    Class wide relief is essential to compel Defendant to comply with the TCPA.

61.    The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for the violation of the TCPA are small.

62.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are all automated and the class members did not provide prior express consent, as required under the statute, to authorize such calls to their cellular telephones.

63.     Defendant has acted on grounds applicable to the class, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate.

64.     Moreover, on information and belief, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## Count I: Violations of TCPA

65.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-64.

66.     Section 227(b)(1)(A)(iii) of the TCPA sets forth restrictions on the use of automated telephone equipment, and provides in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A)     to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> *****
>
> (iii)     to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

67.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

68.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award statutory damages for each and every violation of the statute.

69.     Plaintiff and class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future.

### Trial By Jury

70.     Plaintiff is entitled to, and demands, a trial by jury.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all class members the following relief against Defendant:

A.     Injunctive relief prohibiting such violations of the TCPA by Defendant in the future; including enjoining Defendant from continuing to place calls to Plaintiff's cellular telephone number, and from continuing to place calls to the cellular telephone numbers of members of the class without prior express consent;

B.     As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each class member statutory damages for each and every violation of the TCPA;

C.     An award of attorneys' fees and costs to counsel for Plaintiff and the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate class and any subclass(es) the Court deems appropriate, finding that Plaintiff is a proper representative of the class and any subclass(es), and

appointing the lawyers and law firms representing Plaintiff as counsel for the Class and any subclass(es);

      E.      Such other relief as the Court deems just and proper.


Dated: February 26, 2019                 Respectfully submitted,


                          /s/ *Aaron D. Radbil*

                         Aaron D. Radbil
                         Greenwald Davidson Radbil PLLC
                         401 Congress Avenue, Suite 1540
                         Austin, Texas 78701
                         Phone: (512) 803-1578
                         Fax: (561) 961-5684
                         aradbil@gdrlawfirm.com

                         **KOZONIS & KLINGER, LTD.**

                         Gary M. Klinger (*pro hac vice forthcoming*)
                         4849 N. Milwaukee Ave., Ste. 300
                         Chicago, Illinois 60630
                         Phone: 312.283.3814
                         Fax: 773.496.8617
                         gklinger@kozonislaw.com

                         *Attorneys for Plaintiff and*
                         *the Proposed Class*